Miguel A. Martínez, Fernando L. Báez, Gilberto Már-
quez y otros, querellantes y recurrentes, *v.* Common-
wealth Oil Refining Company, Inc., querellada y
recurrida.

*Número:* R-64-163          *Resuelto:* 30 de junio de 1965

*Antonio José Amadeo, José A. Suro* y *Miguel J. Ríos Lugo,*
abogados de los recurrentes; *Fiddler, González & Rodríguez,
Víctor M. Pons, Jr., Salvador E. Casellas* y *Juan R. Torruella
del Valle,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 24 de enero de 1962, trescientos ochenta y dos (382) obreros de la querellada Commonwealth Oil Refining Co. la demandaron ante la Sala de San Juan del Tribunal Superior en reclamación del pago doble por la hora del almuerzo. Alegaron que ellos trabajaron con la demandada desde el mes de septiembre de 1955 y durante ese período han sido por ella requeridos a trabajar turnos de ocho (8) horas cada uno y en consecuencia no disfrutaban de una hora libre para tomar alimentos según dispone la Ley Núm. 379 de 1948; y que trabajaron dicha hora sin que hubiera estipulación al efecto entre ellos y la demandada con la aprobación del Departamento del Trabajo.

Después de varios incidentes traídos por la Commonwealth y prórrogas que solicitó, en enero 31, 1964 contestó la demandada. Alegó que el Tribunal carecía de jurisdicción por ser el asunto uno propio de ser sometido al Procedimiento de Quejas y Agravios y luego a arbitraje bajo los convenios colectivos existentes entre las partes.

En 25 de junio de 1964 la Sala sentenciadora desestimó la demanda sin ir a los méritos, por entender que el efecto prospectivo que este Tribunal dio a su fallo en el caso de *Pérez* v. *Autoridad Fuentes Fluviales,* 87 D.P.R. 118 (1963); se aplica sólo a las empresas cubiertas únicamente por las leyes de Puerto Rico como en dicho caso, y no a las empresas cubiertas por la legislación federal de Normas Razonables del Trabajo como la aquí demandada. Resolvió

que estos obreros reclamantes debían acudir primero al mecanismo de arbitraje. Expedimos auto de revisión.[1]

El Art. 14 de la Ley Núm. 379 de 1948 dispone que todo patrono fijará un aviso con las horas de trabajo al día durante cada día de la semana, la hora de comenzar y de terminar el trabajo, *y la hora en que empieza y termina el período destinado a tomar los alimentos, que no será menor de una hora*, a menos que por razón de conveniencia *para el empleado* y por *estipulación* de él y su patrono aprobada por el Departamento del Trabajo, se fijare un período menor.

Por la Ley Núm. 121 de 27 de junio de 1961 se enmendó el Art. 14 y se le adicionó que todo patrono que emplee o permita que un empleado trabaje durante la hora señalada para tomar alimentos *vendrá obligado a pagarle por dicha hora o fracción de hora un tipo de salario igual al doble* del tipo convenido para las horas regulares. Véase la Ley Núm. 88 de 22 de junio de 1962.

■ La reclamación de los obreros es únicamente por razón de la doble paga en la hora del alimento. Este derecho les surgió por ley a partir del 27 de junio de 1961, y no antes. Con anterioridad a esa fecha una violación del Art. 14 en lo que respecta al período de alimentos podría dar lugar a otras sanciones, pero no a doble paga, a menos que así se hubiere acordado en un convenio colectivo. Del récord no aparece tal acuerdo en el caso presente.

■ Al disponer este Tribunal que su decisión en el caso de *Pérez* tuviera efecto prospectivo a partir del 25 de enero de 1963 fecha en que fue emitida, no hizo distinción alguna entre empresas bajo la legislación local únicamente y aquéllas a quienes se les aplica la legislación federal de Normas del Trabajo. Era innecesaria una diferenciación, y sobraba,

---

[1] La demandada suscitó la falta de nuestra jurisdicción por no haberse notificado la petición en tiempo. Estudiamos el planteamiento ante las constancias en autos y el mismo quedó desestimado toda vez que expedimos el auto en 11 de septiembre de 1964. El recurso se perfeccionó el 4 de junio de 1965.

precisamente, porque el caso de *Pérez* lo que hace es asimilar la norma de jurisprudencia desarrollada bajo la legislación federal aplicable a las empresas regidas por dicha legislación, y trasladar dicha norma a nuestra jurisdicción laboral. Aparte de que, no estamos en condiciones de asegurar que la empresa en el caso de *Pérez* v. *Autoridad Fuentes Fluviales*, sea una empresa a quien únicamente le es aplicable la legislación de Puerto Rico, ante las guías jurisdiccionales de la Junta Nacional de Relaciones del Trabajo sancionadas dichas guías por el Congreso, y ante la definición de "comercio" de la propia Ley Taft-Hartley. Hicimos referencia a esas guías jurisdiccionales o parte de ellas en *J.R.T.* v. *Milares Realty, Inc.*, 90 D.P.R. 844 (1964).

Las violaciones a los convenios colectivos no tienen en la legislación federal un foro administrativo, según lo tienen bajo la nuestra como práctica ilícita. Esas violaciones hay que dilucidarlas en los tribunales bajo la Sec. 301 de la Ley Taft-Hartley, 61 Stat. 156. De ahí que, a tenor de prácticas más convenientes y deseables dentro de los fines y propósitos de las leyes laborales, la norma de jurisprudencia federal se ha desarrollado en el sentido de ampliar el contenido de las cláusulas de quejas y agravios y de arbitraje de los convenios para que incluyan en forma comprensible toda clase de disputas por violación, sin que estén excluidas por ello aquéllas que envuelvan pago de salarios. Sin embargo, la disputa debe guardar alguna relación con el convenio mismo y sus pactos.(²)

En el propio caso de *Pérez* el convenio colectivo contenía en su texto una cláusula en virtud de la cual la Autoridad se obligaba, si permitía a cualquier obrero trabajar más de ocho horas (8) al día ó 44 durante la semana, a pagar

---

(²) Consúltese: *Republic Steel* v. *Maddox*, 379 U.S. 650; *Packinghouse Workers* v. *Needham*, 376 U.S. 247; *Drake Bakeries* v. *Bakery Workers*, 370 U.S. 254; *Smith* v. *Evening News Assn.*, 371 U.S. 195; *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95; *Dowd Box Co.* v. *Courtney*, 368 U.S. 502; *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448.

tiempo doble por el exceso. Se verá que el derecho de aquellos obreros a paga doble en exceso de 44 horas le surgía no de la ley, sino del propio convenio colectivo.

■ En este caso el derecho de los obreros surge de una disposición de ley que se adopta por primera vez en 27 de junio de 1961. El convenio colectivo que regía en esa fecha, y en 24 de enero de 1962 cuando se radicó la demanda se había otorgado en 11 de abril de 1961. No contenía disposición de paga relativa a la hora del almuerzo. Volviendo a la razón que dimos para hacer sólo de efecto prospectivo nuestra decisión de *Pérez*, mal podía haber estado en la mente de los contratantes el 11 de abril de 1961 una disputa con motivo de un derecho que en ese entonces no existía por ley ni por convenio. Ese efecto prospectivo que dimos a la decisión de *Pérez* es una cuestión de norma nuestra que en nada tropieza con la norma de jurisprudencia federal aun cuando se trate de una empresa en el comercio interestatal, particularmente en el caso de autos en que lo que está envuelto es un derecho protegido por ley sustantiva puertorriqueña únicamente y no está protegido por ley sustantiva federal.

■ Aparte de lo dicho veamos el fin práctico, que debió ser tenido en cuenta por la Sala sentenciadora ante la política pública inamovible que va para casi medio siglo de vigencia al efecto de que las reclamaciones de obreros se ventilen prontamente. Ni el Comité de Quejas y Agravios, ni un árbitro podrían válidamente dictaminar que a estos obreros no se les pague doble por la hora de alimentos según manda la Ley Núm. 121. No podrían interpretar parte alguna del convenio de modo que condujera a un resultado distinto. Quedaría sólo para el árbitro resolver si todos o uno o cuál obrero trabajó o no de hecho durante ese período de alimentos. A esa determinación que no envuelve interpretación del convenio puede llegar de una vez la Sala sentenciadora, si quiere, a través de un comisionado especial que nombre para que reciba la prueba sobre ese extremo. No vemos pues la

necesidad, ni lo práctico de sacar el asunto del Tribunal y enviarlo a un comité con la inevitable pérdida de tiempo.

Este caso que envuelve una reclamación de salarios lleva tres años y medio en litigio y aún no ha ido a sus méritos. Los tribunales y los abogados no deben perder de vista que hay un mandato legislativo claro de que este tipo de casos no se dilaten indebidamente.

*Se revocará la sentencia que desestimó la demanda y se devolverán los autos para que se litigue en los méritos la reclamación y para todo otro ulterior procedimiento compatible con lo aquí expresado.*