JUAN JOSÉ HERNÁNDEZ CIBES, demandante y recurrido, *v.* ASOCIACIÓN HOSPITAL DEL MAESTRO, INC., JOSÉ ELIGIO VÉLEZ TORRES, PRESIDENTE DE SU JUNTA DE DIRECTORES, demandados y peticionarios.

*Número:* O-76-279      *Resuelto:* 31 de mayo de 1977

*Luis E. Gandía Argüelles* y *Francisco A. Colón Cruz,* abogados de la peticionaria; *Enrique González* y *René Muñoz Padín,* abogados del recurrido.

PER CURIAM: En 18 de abril de 1975 el Dr. Juan J. Hernández Cibes fue informado, en comunicación firmada por el Presidente y el Secretario respectivamente de la Facultad Médica ([1]) del Hospital del Maestro, que en reunión celebrada

---

([1]) El nombre correcto es Facultad Médica y Dental del Hospital del Maestro, Inc.

por el Comité Ejecutivo de dicha Facultad el día 8 del mismo mes, se acordó recomendar la suspensión de sus privilegios como miembro activo de la referida Facultad Médica. La decisión de suspender al Dr. Hernández Cibes se basó en un estudio de los cargos que tuvo ante sí el Comité Ejecutivo los cuales estaban apoyados en declaraciones juradas que tuvo ante sí. El querellado ejerció su derecho a solicitar una vista y reconsideración de dicha determinación ante el Comité de Revisión Judicial conforme lo autoriza el Art. III, Sec. VI, inciso B, del Reglamento de la Facultad Médica.

El referido Comité de Revisión Judicial se compuso de cinco miembros designados de entre la Facultad Médica y el Comité Profesional de la Junta de Directores, ninguna de cuyas personas había intervenido directamente en la consideración del caso. El querellado tuvo amplia oportunidad para presentar sus puntos de vista e interrogar a los testigos cuya comparecencia había requerido.

El Comité de Revisión Judicial, presidido por el Dr. Adán Nigaglioni, sometió su informe y recomendaciones en torno a la apelación del querellado, enviando copia del mismo al Comité Ejecutivo de la Facultad Médica, a la Junta de Directores de la Asociación del Hospital del Maestro, Inc. y al querellado Dr. Hernández Cibes. Las determinaciones contenidas en dicho informe fueron las siguientes: (1) El querellado no fue lo suficientemente diligente para conseguir quien le relevara en un turno de guardia de emergencia en 14 de noviembre de 1974; (2) El expediente clínico de una de sus pacientes hospitalizada en febrero de 1975 resultaba inadecuado por no reflejar la gravedad de su estado ni el tratamiento recibido; (3) los expedientes médicos del querellado durante el último año reflejaban una manifiesta falta de diligencia y esmero de su parte.

Aunque el Comité de Revisión Judicial encontró probadas las faltas imputadas expresó no coincidir con la recomendación del Comité Ejecutivo de suspender al querellado sus pri-

vilegios como miembro de la Facultad. En consideración a "la pasada y comprobada dedicación del doctor Hernández Cibes a la Institución y su propósito reiterado de enmienda" el Comité de Revisión Judicial recomendó a la Junta de Directores que no retirara al querellado de la Facultad activa del hospital sino que le extendiera nombramiento de carácter probatorio por el período de un año (a vencer en 30 de junio de 1976), y que al final de ese período se le levantara la limitación a sus privilegios sujeto a la previa recomendación favorable de la Facultad del Departamento de Obstetricia y Ginecología, a solicitud de la Junta de Directores a través del jefe de dicho Departamento.

El querellado fue entonces notificado por el Presidente de la Junta de Directores que conforme a la recomendación del Comité de Revisión Judicial se le extendía un nombramiento provisional de médico obstetra y ginecólogo por un año a vencer en 30 de junio de 1976. Expresaba dicha comunicación que su labor sería evaluada al final del año por los miembros de su departamento. El querellado cursó una aceptación al nombramiento provisional extendídole.

En 27 de marzo de 1976, antes de vencer el nombramiento provisional del querellado, el Director Médico del Hospital del Maestro le comunicó que la Junta de Directores, en reunión extraordinaria, había resuelto no aceptar las recomendaciones del Comité de Revisión Judicial y por unanimidad había acordado cancelar su nombramiento como miembro de la Facultad Médica y suspenderle todos sus privilegios, efectivo inmediatamente. Se le advertía que, conforme lo dispone el Art. III, Sec. VI del Reglamento podía solicitar reconsideración y vista de la Junta de Directores.

Aunque la Junta de Directores le había extendido un nombramiento provisional por recomendación del Comité de Revisión Judicial, es evidente que aún no había tomado acción definitiva·en cuanto al "status" del Dr. Hernández Cibes como miembro activo de la facultad. El nombramiento provisional

parecía ser indicativo que aún no se había resuelto la querella. Su condición de miembro de la facultad continuaba en cuestión y sujeto a la evaluación que habría de hacer el departamento al que pertenecía.

Por constituir esa decisión una acción contraria a la recomendación del Comité de Revisión Judicial el médico aludido tenía el derecho de solicitar una reconsideración de la determinación y la celebración de un vista. Art. III, Sec. VI. El querellado así lo solicitó y la Junta de Directores señaló una vista para el día 14 de mayo siguiente. En su solicitud impugnó el poder de la Junta para la suspensión inmediata.

En vista de la naturaleza sumaria de la suspensión, el 3 de mayo de 1976 el querellado solicitó del Tribunal Superior que expidiera una orden de *injunction* dirigida al Hospital del Maestro para que se le restituyera como miembro de la Facultad Médica por constituir la suspensión una violación de las disposiciones reglamentarias.

El Hospital del Maestro se opuso a la expedición del *injunction* por el fundamento de que el nombramiento provisional extendido al querellado había expirado con la acción de la Junta de Directores en 27 de marzo de 1976, y en todo caso por ser la petición prematura por no haberse agotado el trámite administrativo de reconsideración ante la Junta de Directores, cuya vista estaba señalada para el día 14 de mayo de 1976.

Expedimos orden dirigida a ambas partes que mostraran causa por la que (1) no debía ordenarse la continuación de los procedimientos administrativos ante la Junta de Directores de la Asociación Hospital del Maestro, Inc., para determinar si procede la suspensión de los privilegios del Dr. Juan Hernández Cibes como miembro activo de la Facultad Médica de la referida institución; y (2) de proceder la suspensión, si la misma debía ser efectiva a la terminación del período probatorio señalado por la Junta de Directores, o sea, en 30 de junio de 1976, o si dicha suspensión es la del tipo sumario

a que se refiere la Sec. VI del Reglamento; y (3) no deba dejarse sin efecto la orden de *injunction* preliminar dictada por el tribunal de instancia a partir de la fecha de vencimiento del nombramiento provisional extendido por la Junta de Directores. (²)

Las partes comparecieron y expusieron sus puntos de vista en relación con los señalamientos de nuestra orden de mostrar causa. Los argumentos ofrecidos por las partes nos dan base para exponer algunos criterios que pueden servir de guía en la resolución de la controversia suscitada.

El reglamento de la institución peticionaria dispone, en lo que es aquí pertinente, lo que exponemos a continuación. El ser miembro de su facultad médica es un privilegio que solamente se extenderá a aquellos médicos que cumplan estrictamente y continúen cumpliendo con las normas y requisitos exigidos por el reglamento. Solamente se admitirán médicos cuyo entrenamiento y experiencia aseguren, a juicio de la Junta de Directores, que cualquier paciente admitido o tratado en el Hospital del Maestro tendrá el mejor cuido y pericia profesional. Deberán conducirse en la más alta tradición ética. Art. III, Sec. I. Los nombramientos se harán por la Junta de Directores, previa recomendación de la facultad activa, por períodos de un año o hasta el 30 de junio de cada año que es el cierre del año fiscal. Cualificarán para renovación de su nombramiento por un año adicional aquellos que sean recomendados por el jefe del departamento concernido al Comité Ejecutivo de la Facultad, el que a su vez someterá sus recomendaciones a la Junta de Directores, a través del Director Médico, con recomendaciones adicionales sobre los privilegios que estime deben extenderse a los candidatos, bien fuere ampliando o restringiendo los privilegios. Art. III, Sec. IV.

---

(²) A solicitud de la parte peticionaria ordenamos la paralización de los procedimientos relacionados con la orden de *injunction* permanente ante el tribunal de instancia.

En los casos en que el Comité Ejecutivo recomiende suspender o revocar el nombramiento de un miembro de la facultad, el miembro afectado podrá solicitar reconsideración de su caso ante la Comisión de Revisión Judicial a base de que la decisión fuere errónea, irrazonable, arbitraria o caprichosa. El Comité Ejecutivo deberá hacer los arreglos para que el querellado tenga una audiencia ante el Comité de Revisión Judicial, previa la notificación de una relación de los actos u omisiones que se le imputan. El Comité de Revisión Judicial consistirá de 5 miembros seleccionados entre los miembros de la Facultad Médica y del Comité Profesional de la Junta de Directores que no hayan tomado parte en las deliberaciones contra el miembro afectado. Este tendrá el derecho de presentar y examinar testigos, presentar evidencia, repreguntar a los testigos de oposición, impugnar sus testimonios y rebatir la evidencia presentada contra él. El Comité de Revisión Judicial hará un informe con sus recomendaciones al Comité Ejecutivo de la Facultad Médica y a la Junta de Directores, y notificará una copia al miembro afectado. Dicho informe puede contener recomendaciones para que la Junta de Directores confirme, modifique o rechace las recomendaciones originales del Comité Ejecutivo. El perjudicado podrá apelar de ello dentro de los 10 días después de ser notificado para ante la Junta de Directores y solicitar una audiencia. Art. III, Sec. VI. Dicha apelación es renunciable si no se solicita. En el evento de que la Junta tome una acción contraria a las recomendaciones de la Facultad Médica en cuanto a nombramientos o privilegios la parte perjudicada podrá solicitar reconsideración y vista ante la Junta de Directores.

◼ Un examen detenido del reglamento de la institución recurrente a la luz de los hechos que surgen del expediente del caso y de la sentencia dictada por el tribunal de instancia al expedir la orden de *injunction* preliminar revela que la aludida institución provee todos los resguardos necesarios que exige el debido procedimiento de ley, y que como cuestión de

hecho, dicha institución ha observado y el médico recurrido se ha valido de las disposiciones reglamentarias pertinentes. En vista de que la adjudicación final de la Junta fue contraria a las recomendaciones del Comité de Revisión Judicial, para lo cual tiene facultad reglamentaria, queda aún pendiente el derecho a la reconsideración y vista solicitada y ya concedida por la Junta de Directores, cuya vista quedó en suspenso al recurrir el médico afectado ante el Tribunal Superior en solicitud de la orden de *injunction.*

La controversia que suscita su petición de *injunction* queda limitada a resolver si la suspensión inmediata decretada por la Junta de Directores fue válida a la luz de lo dispuesto en el reglamento de la institución. El reglamento provee el trámite para la suspensión sumaria absoluta, así como para la suspensión limitada de un miembro de la facultad. La primera de las dos, o sea, la absoluta, se origina cuando la Junta de Directores, o el Comité Ejecutivo o el Jefe del Departamento correspondiente determina que debe tomarse acción inmediata para proteger la vida o el bienestar de un paciente, o cuando la licencia del médico es cancelada o suspendida por la Junta Examinadora de Médicos; y la segunda, o sea, la suspensión limitada, se produce si el médico ha incumplido con el requerimiento del Director Médico de la institución de completar la preparación de los récords médicos de pacientes del médico en cuestión, para lo cual se le conceden treinta (30) días. Art. III, Sec. VI.

■ No surge del expediente que la suspensión sumaria del Dr. Hernández Cibes haya sido motivada por una de las causales dispuestas por reglamento para ello. En su consecuencia, la suspensión decretada debe ajustarse a las normas reglamentarias para suspensiones ordinarias para lo cual debe seguirse el trámite administrativo que señalamos anteriormente en esta opinión.

■ La discreción que tiene la Junta de Directores de un hospital privado para suspender a un miembro de su facultad

médica o para retirarle o limitarle sus privilegios como tal, no puede ser ejercida de modo irrazonable, caprichoso o arbitrario. Art. III, Sec. VI. Se ha sostenido que un médico que haya sido excluido irrazonablemente de la facultad de un hospital podría ser repuesto. Véase *Woodward* v. *Porter Hospital*, 217 A.2d 37 (1966). Los tribunales harán caso omiso o declararán inválidas las normas que adoptare un hospital para suspensiones si dichas normas resultaren muy vagas o subjetivas. Una afirmación, por ejemplo, al efecto de que la suspensión fue efectuada en los mejores intereses del hospital o de sus pacientes, sin estar apoyada en hechos específicos podría ser invalidada. Véase *Milford* v. *People's Community Hospital Authority*, 144 N.W.2d 687 (1966).

▮ También se ha reconocido que un médico debe tener la oportunidad de una audiencia para presentar la evidencia con que contare antes de que la acción tomada contra él por la institución sea final, a menos que su continuada presencia en el hospital constituyera una seria e inmediata amenaza. Véase, *Sussman* v. *Overlook Hospital Ass'n*, 231 A.2d 389 (1971).

▮ En cuanto a sus remedios ante los tribunales, es nuestra opinión que, antes de recurrir a ellos, debe haber agotado los remedios que ofrecen los procedimientos disponibles en ley, y solamente intervendremos cuando el hospital hubiere incurrido en violaciones de sus propios requisitos procesales de notificación y vista.

▮ Reconocemos que los hospitales han ido asumiendo una responsabilidad creciente en relación con la calidad de los servicios rendidos por los médicos de su facultad. Por ello, los hospitales tienen un legítimo interés en que los médicos de sus facultades posean las cualificaciones y observen la conducta requerida para la consecución del mejor cuido y tratamiento de los pacientes que allí acuden. En ese empeño es necesario que sus medidas de evaluación periódica de la competencia profesional de sus médicos y en relación con el man-

ténimiento cuidadoso de los récords médicos sean de excelencia. Las juntas directivas, por lo tanto, deben velar por que los mecanismos que aseguren la calidad del cuidado de los pacientes sean establecidos y mantenidos celosamente. Véanse *Darling* v. *Charleston Community Memorial Hospital*, 211 N.E.2d 253 (1965), *cert.* den. 383 U.S. 946 (1966); *Hansch* v. *Hackett*, 66 P.2d 1129 (1937). Consideramos una buena norma la de no intervenir con los criterios adoptados por las juntas directivas de los hospitales en la reglamentación de sus facultades médicas a menos que la reglamentación no satisfaga los requisitos mínimos del debido proceso de ley y que sus determinaciones sustantivas sean arbitrarias, caprichosas o irrazonables. Véanse *Klinge* v. *Lutheran Charities Association of St. Louis*, 523 F.2d 56 (8th Cir. 1975); *Kaplan* v. *Carney*, 404 F.Supp. 161 (E.D. Mo. 1975); *State ex rel. Wolf* v. *La Crosse Lutheran Hospital Ass'n*, 193 N.W. 994 (1923).

▬▬▬ Resumimos suscintamente los hechos relatados precedentemente. El Comité Ejecutivo de la Facultad Médica recomendó suspenderle los privilegios de miembro de dicha facultad al Dr. Hernández Cibes por las razones expuestas en el pliego de cargos notificádole. En apelación, el Comité de Revisión Judicial, aunque encontró sustancialmente probados los cargos, recomendó que el médico afectado continuara formando parte de la facultad mediante un nombramiento de carácter probatorio por un año, sujeto a que al finalizar dicho período obtuviera la recomendación favorable de la Facultad del Departamento de Obstetricia y Ginecología. La recomendación del Comité de Revisión Judicial estaba predicada en la pasada y comprobada dedicación del doctor Hernández Cibes a la Institución y su propósito reiterado de enmienda. La Junta de Directores inicialmente siguió la recomendación del nombramiento provisional, y luego de evaluar las recomendaciones que tenía ante sí optó por suspender al Dr. Hernández Cibes. Conforme lo dispone el reglamento, a petición de dicho

médico señaló una vista en reconsideración. Hasta ese momento se habían observado los trámites reglamentarios, con la excepción de la suspensión sumaria, la cual no procede a menos que sea por las razones aducidas en el reglamento. Hasta que la Junta de Directores resuelva la reconsideración solicitada no puede recurrir a los tribunales el médico perjudicado para que se adjudique su condición de médico activo. El tribunal entonces podrá determinar si la acción tomada por la Junta fue caprichosa, arbitraria o irrazonable.

*Se expedirá el auto, se modificará la orden de injunction preliminar que restableció todos los derechos y prerrogativas del Dr. Juan Hernández Cibes como miembro activo de la Facultad Médica del Hospital del Maestro, y se limitará su vigencia como miembro provisional hasta que la Junta de Directores resuelva la reconsideración pendiente ante ella. En su consecuencia se ordenará al tribunal de instancia a devolver el caso para que se continúe el trámite reglamentario administrativo ante la Junta de Directores del Hospital del Maestro para la determinación final del "status" del médico recurrido.*

Los Jueces Asociados Señores Rigau y Torres Rigual no intervinieron.